Nathan Epstein and Florence Epstein, et al. [1] v. Commissioner. Epstein v. Commissioner
Docket Nos. 1218-69, 1219-69, 1220-69.
United States Tax Court
T.C. Memo 1972-53; 1972 Tax Ct. Memo LEXIS 199; 31 T.C.M. (CCH) 217; T.C.M. (RIA) 72053; February 28, 1972, Filed Jerome Kamerman, 500 Fifth Ave., New York, N. Y., and Steven N. Fischer, for the petitioners. Steven B. Nagler, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes and additions to the tax for the taxable year 1964 as follows: Addition to tax
under Sec. 6653(a)
Docket No.
Petitioners
Deficiency
I.R.C. 1954
1218-69
Nathan Epstein and Florence Epstein
$1,008.52
$ 50.43
1219-69
Joseph B. Epstein and Lila A. Epstein
2,027.56
101.38
1220-69
Herbert Epstein and Elissa Epstein
916.83
45.84
*201 218 The issue for decision is whether the distributable income of each couple of petitioners from National Machinery Exchange, Inc., a small business corporation as defined by section 1371, I.R.C. 1954, [2] should be increased by their pro rata portion of the increased corporate income resulting from the disallowance of a deduction to the corporation of part of the payments made by the corporation on behalf of its officer-stockholders for medical services. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners Nathan Epstein and Florence Epstein are husband and wife who at the time of filing their petition herein resided in Belle Harbor, New York. They filed a joint Federal income tax return for the taxable year 1964 with the district director of internal revenue, New York, New York. Petitioners Joseph B. Epstein and Lila A. Epstein are husband and wife who at the time of filing their petition herein resided in Belle Harbor, New York. They filed a joint Federal income tax return for the taxable year 1964 with the district director *202 of internal revenue, New York, New York. Petitioners Herbert Epstein and Elissa Epstein are husband and wife who at the time of filing their petition herein resided in Hewlett Harbor, New York. They filed a joint Federal income tax return for the taxable year 1964 with the district director of internal revenue, New York, New York. Irving Epstein, who died suddenly of a heart attack in October 1965 while on his way to board an airplane, was the father of petitioners Nathan, Joseph, and Herbert Epstein. The Epstein brothers and their father, in 1961, incorporated as the successor to a partnership, National Machinery Exchange, Inc. (hereinafter referred to as the Corporation). The Corporation was incorporated pursuant to the laws of the State of New York and had its principal offices in New York, New York. The Corporation kept its books and filed its Federal income tax returns on the basis of a fiscal year ending March 31. The Corporation elected small business corporation status, pursuant to section 1371, in 1961. The business of the Corporation is to purchase used metal fabricating equipment from the government and others such as the major automobile manufacturers and to modify *203 and resell the machines to smaller corporations. The following schedule shows the persons who at all times during its fiscal year ended March 31, 1964, were the officers of the Corporation, together with the salaries received by each during that fiscal year: Name
Office
Salary
Joseph Epstein
President
$100,000
Irving Epstein
Vice President
50,000
Nathan Epstein
Secretary
50,000
Herbert Epstein
Treasurer
50,000
Nathan Epstein, Joseph Epstein, and Herbert Epstein were the directors of the Corporation during its fiscal year 1964. Irving Epstein attended directors' meetings and had a voice in management of the Corporation. On March 31, 1964, the capital stock of the Corporation was owned by the persons in the percentages as follows: Joseph Epstein
47 1/2 percent
Nathan Epstein
27 1/2 percent
Herbert Epstein
25 percent
As of March 31, 1963, and for some time prior thereto, Irving Epstein had owned a 7 1/2 percent capital stock interest in the Corporation and Joseph Epstein had owned a 40 percent interest. In December 1963 Irving transferred his 7 1/2 percent interest to Joseph. The four officers, Joseph, Irving, Nathan, and *204 Herbert Epstein, performed similar duties for the Corporation. They were responsible for purchasing new and used equipment, redesigning the machines when necessary and selling them. In the performance of these duties all the officers traveled extensively to locate machinery to purchase and to effect sales. Each of them devoted his full time to the Corporation's business. Although the directors of the Corporation rarely held scheduled meetings, it was their practice to meet at the end of each fiscal year to set the compensation of the Corporation's officers for the coming fiscal year. In March 1963 the directors held such a meeting at the offices of the Corporation. The meeting was attended by the three directors, Joseph, Nathan, and Herbert, and was also attended by Irving Epstein and the Corporation's accountant. 219 At this meeting the directors discussed an increase in the compensation for the officers. The accountant suggested as an alternative that the officers take the increase in some form of non-taxable fringe benefit since because of their income tax bracket most of any direct salary increase would be paid in income taxes. Among the suggestions the accountant offered *205 was a medical reimbursement plan under which the officers and their dependents would be reimbursed by the Corporation for medical expenses. The directors adopted the suggestion of such reimbursements in addition to the salaries for the officers as listed above. The plan covered only the four corporate officers and their dependents and provided for the Corporation to pay all the medical expenses of those covered. The plan was to continue in effect until terminated by action of the board. The "medical reimbursement plan" was not reduced to writing. At no time during its existence have written minutes of the meetings of the board of directors been kept by the Corporation. In addition to the officers, the Corporation employed on a regular basis five or six persons as office clerks, warehouse porters, and mechanics. These persons were not covered by the medical reimbursement plan. The officers of the Corporation were in excellent health at the time the medical reimbursement plan was adopted. During the fiscal year ended March 31, 1964, the Corporation made payments for medical services including hospital costs on behalf of the following individuals and for Blue Cross hospitalization *206 insurance in the amounts indicated: Irving Epstein
$6,179.39
Nathan Epstein
1,043.13
Joseph Epstein
462.00
Herbert Epstein
75.00
Hospitalization insurance (Blue Cross) 1,131.08
$8,890.60
Of the hospitalization insurance payments of $1,131.08, the amount of $608.16 was paid for Irving, Nathan, Joseph and Herbert Epstein. Irving Epstein had an operation in the fall of 1963 because of a problem unrelated to any condition existing in the spring of 1963. He was hospitalized for over 6 weeks but had returned to full-time duty with the Corporation before the end of 1963. The Corporation on its Federal Small Business Return of Income for its fiscal year ended March 31, 1964, deducted the $8,890.60 of medical expenses which it paid. Respondent determined the Corporation's income to be $116,430.01. In making this determination, respondent disallowed as a deduction $6,012.03 of the amounts expended by the Corporation for hospitalization and medical expenses with the explanation that this portion of the claimed deduction was not allowable under section 162. Respondent increased the income of each petitioner couple by the share of the Corporation's increased distributable *207 income that was proportionate to the husband petitioner's interest in the Corporation. Opinion Petitioners' primary position is that the total $8,890.60 deducted by the Corporation as medical payments is properly deductible as such under section 162 and section 1.162-10, Income Tax Regs., providing for deduction of amounts paid or accrued for certain employee benefits. This section of the regulations includes within the list of deductible items amounts paid for sickness, accident, hospitalization and medical expense for employees. In the alternative petitioners contend that since the amount of $6,012.03 which was disallowed by respondent was all paid for the benefit of corporate officers, this amount is properly deductible as additional compensation to these officers if it is not properly deductible as medical benefit payments. Respondent, while not conceding petitioners' alternative contention, did by amended answer allege that if petitioners are sustained on their alternative contention, there are deficiencies due from petitioners based in each case on the *208 amount of medical payments made for the petitioner in that case. Respondent contends that the medical benefit payments which are deductible under section 1.162-10, Income Tax Regs., are those paid for a health and accident plan within the meaning of section 105. [3] 220 Respondent contends that the Corporation did not have such a plan but that if such a plan did exist, it was not for the benefit of the employees of the Corporation but for its stockholders. While petitioners do not concede that the payments by the Corporation would not be deductible by it unless the Corporation had a "plan for employees," their primary contention is that the Corporation did have such a plan. [4]
*209 In order for an amount paid to or for the benefit of an employee by his employer to be received by him as "accident or health insurance" within the meaning of section 105(b), the employer must have a "plan" and that "plan" must be "for employees." Alan B. Larkin, 48 T.C. 629 (1967), aff'd 394 F. 2d 494 (C.A. 1, 1968). Section 1.105-5, Income Tax Regs., states in part: In general, an accident or health plan is an arrangement for the payment of amounts to employees in the event of personal injuries or sickness. A plan may cover one or more employees, and there may be different plans for different employees or classes of employees. An accident or health plan may be either insured or noninsured, and it is not necessary that the plan be in writing or that the employee's rights to benefits under the plan be enforceable. However, if the employee's rights are not enforceable, an amount will be deemed to be received under a plan only if, on the date *210 the emoloyee became sick or injured, the employee was covered by a plan (or a program, policy, or custom having the effect of a plan) providing for the payment of amounts to the employee in the event of personal injuries or sickness, and notice or knowledge of such plan was reasonably available to the employee. * * * In John C. Lang, 41 T.C. 352, 355-356 (1963), we interpreted this regulation to mean: * * * in order for there to be a plan, the employer must commit himself to certain rules and regulations governing payment; these rules must be made known to his employees as a definite policy; it is not enough that he merely lets it be known that payments may be made to deserving employees if they are absent from work for illness. The employer's rules, adopted or crystallized by policy or custom, may offer varying treatment for employees, but the rules must be determinable before the employee's sickness arises. In our view our question here is purely factual. The factual question we must decide is whether the Corporation had an accident and health "plan" within the meaning *211 of section 105(e) and respondent's regulations, and if so, was that "plan" for "employees" as distinguished from being a method of distribution of profits to stockholders. There is no written evidence of a plan by the Corporation. In fact the Corporation did not keep minutes of any of its directors' meetings. However, respondent's own regulations are clear that a plan in writing is not required. What is required is that the employees who are covered have reasonable notice or knowledge that they are covered by the plan. In this case the record shows that Irving Epstein and his three sons, the petitioners here, were present at the meeting held in March 1963 at which the plan was adopted and that they had knowledge of the plan. The plan adopted at the 221 March 1963 meeting was for the Corporation to reimburse the officers and their families for medical expenses. During the years in issue all three Epstein brothers and their father received medical reimbursement payments from the Corporation. The respondent's contention that the directors could choose which employees would be covered by the plan as in John C. Lang, supra, and Chism's Estate v. Commissioner, 322 F. 2d 956 *212 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court, is not supported by the record. The evidence is clear that the directors chose themselves and their father and their families as the beneficiaries at the time the plan was adopted. At that time all the officers were in reasonably good health. On the facts of this record we conclude that petitioners have met their burden of proof to show the existence of a plan. Respondent contends that if the Corporation had a plan, it was for the benefit of the stockholders rather than employees. All of the officers of the Corporation were stockholders at the time the plan was adopted although they owned varying proportions of stock. However, all the stockholders were also employees of the Corporation and were its only executive and managerial employees. We stated in Samuel Levine, 50 T.C. 422, 427 (1968), that: * * * there must be some rational basis other than ownership of the business to justify discrimination among employees; i.e., that the so-called sick pay in question must in fact represent bona fide sick pay for employees *213 rather than distributions to stockholders. The mere circumstance that the payments may be labeled sick pay for employees is not conclusive, and the Court is justified in examining the situation carefully to determine whether the label in fact speaks the truth. * * * In the present case, the Corporation expended some $1,131.08 for Blue Cross protection for all its employees; $608.16 for the four Epsteins and $522.92 for others. Respondent does not contend that this payment was not an allowable deduction under section 162(a) for the Corporation. The issue between the parties concerns whether the supplemental plan for the stockholder-officers was established on a reasonable basis for their benefit as "employees." Although the officers were all shareholders at the time the plan was adopted, their salaries were not in proportion to their holdings. Although each was in good health at the time the plan was adopted, it was only reasonable to assume that Irving Epstein, being the oldest, might benefit the most from the plan. Irving held the smallest number of shares of any officer but received the largest amount of medical benefit payments from the Corporation. The four officers composed *214 a separate group within the Corporation with respect to duties as well as remuneration. Each was essentially a buyer and seller of used machinery and each was a keyman to the success of the Corporation. None of the other employees served in such a position. It is our view that petitioners and their father, Irving Epstein, formed a class of employees which could be rationally segregated from the other employees on a criterion other than being shareholders of the Corporation. We conclude from the record as a whole that the Corporation had a medical plan for employees and not for shareholders. We therefore hold that the payments made to petitioners by the Corporation were ordinary and necessary business expenses of the Corporation under section 162(a). Decisions will be entered for petitioners. Footnotes
1. Cases of the following petitioners are consolidated herewith: Joseph B. Epstein and Lila A. Epstein, docket No. 1219-69, and Herbert Epstein and Elissa Epstein, docket No. 1220-69.↩
2. All references are to the Internal Revenue Code of 1954, as amended.↩
3. SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS. (a) Amounts Attributable to Employer Contributions. - Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer. (b) Amounts Expended for Medical Care. - Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include amounts referred to in subsection (a) if such amounts are paid, directly or indirectly, to the taxpayer to reimburse the taxpayer for expenses incurred by him for the medical care (as defined in section 213(e)) of the taxpayer, his spouse, and his dependents (as defined in section 152). * * * (e) Accident and Health Plans. - For purposes of this section and section 104 - (1) amounts received under an accident or health plan for employees, and (2) amounts received from a sickness and disability fund for employees maintained under the law of a State, a Territory, or the District of Columbia, shall be treated as amounts received through accident or health insurance. ↩
4. Petitioners apparently recognize that unless the payments of medical expenses are deductible by the Corporation as payments for their benefit which are not includable in their income because of the provisions of section 105(b), they would be required to include the amounts paid for their benefit by the Corporation in their income, either as distributable income of the Corporation or as compensation paid to them by the Corporation. However, if the amounts are additional compensation to petitioners, the major portion was paid to them in 1963 and not in 1964, the year here before us. Both parties recognize that under section 105(b) the amounts are not excludable from petitioners' income unless they constitute amounts received "through accident or health insurance" within the meaning of section 105(a) and that these payments made to petitioners by the Corporation are not received by them "through accident or health insurance" unless under the provisions of section 105(e)↩ the amounts are treated as amounts received through accident or health insurance because of being received under an accident or health plan of the Corporation.